## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | 2:08cr393 |
| v. | ) | Electronic Filing |
| | ) | |
| **TIMOTHY SUNDAY** | ) | |

## <u>OPINION</u>

On November 13, 2008, a grand jury returned a two-count indictment against Timothy Sunday ("defendant") charging him with possession of a firearm and possession of ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). Each count further charged that defendant possessed the prohibited object after having been convicted of three prior offenses that triggered the enhanced penalties mandated by the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). On April 8, 2011, defendant pled guilty to the charge of being a felon in possession of a firearm. On August 11, 2011, he was sentenced to a term of incarceration of 180 months. On January 20, 2017, his sentence was vacated pursuant to a determination that one of the prior predicate offenses used to enhance his sentence was for Pennsylvania burglary and as a result his sentence had been rendered unconstitutional by the Supreme Court's decision in <u>Johnson v. United States</u>, -- U.S. --, 135 S. Ct. 2551 (2015). Presently before the court are the parties' submissions in conjunction with resentencing. The parties vehemently disagree about whether defendant remains subject to the enhanced penalties mandated by 18 U.S.C. § 924(e). For the reasons set forth below, we conclude that the government has met its burden of showing defendant continues to qualify as an armed career criminal offender and thus remains subject to those penalties.

The government seeks to subject defendant to the ACCA based on three prior

Pennsylvania convictions — one for a controlled substance offense and two for felony robbery. Defendant advances objections predicated on the contention that Pennsylvania's robbery statute is indivisible, further inquiry into the factual conduct on which the convictions were based is prohibited by the Sixth Amendment and the fact-based inquiry needed to sentence defendant under the ACCA is precluded by <u>Mathis v. United States</u>, 579 U.S. __, 136 S. Ct. 2243 (2016).

The ACCA provides:

> in the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or serious drug offense ... committed on different occasions from one another, such person shall be ... imprisoned not less than fifteen years.

18 U.S.C. § 924(e)(1).  It defines a "serious drug offense" as:

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A)(ii); <u>United States v. Abbott</u>, 748 F.3d 154, 159 (3d Cir. 2014).

It defines a "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . .  that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives . . . .

18 U.S.C. § 924(e)(2)(B) (emphasis added); <u>Johnson v. United States</u>, -- U.S. --, 135 S. Ct. 2551, 2555 (2016).

Application of the ACCA "raises the penalty for possession of a firearm by a felon from a maximum of 10 years . . . to a mandatory minimum sentence of 15 years and a maximum of life in prison."  <u>United States v. Kole</u>, 164 F.3d 164, 168 (3d Cir. 1998) (quoting <u>Custis v. United States</u>, 511 U.S. 485 (1994))).  A defendant subject to the ACCA is classified as an armed career criminal pursuant to § 4B1.4 of the Sentencing Guidelines.  <u>See</u> U.S.S.G. § 4B1.4.

"The ACCA is a sentence enhancement statute and does not create a separate offense." United States v. Mack, 229 F.3d 226, 231 (3d Cir. 2000), cert. denied, 532 U.S. 1045 (2001). It is triggered in part by the existence of three prior predicate convictions for a violent felony and/or a serious drug offense. 18 U.S.C. § 924(e). As to the existence of these qualifying prior convictions, neither Descamps v. United States, – U.S. – 133 S. Ct. 2276 (2013) nor Alleyne v. United States, – U.S. –, 133 S. Ct. 2151 (2013) altered the exception under Almendarez-Torres v. United States, 523 U.S. 224 (1998), that "a judge, rather than a jury, may determine 'the fact of a prior conviction.'" United States v. Blair, 734 F.3d 218, 226 (3d Cir. 2013) (Descamps and Alleyne did "nothing to restrict the established exception under Almendarez–Torres that allows judges to consider prior convictions."); United States v. Burnett, 773 F.3d 122, 135 (3d Cir. 2014) (Almendarez–Torres remains as controlling law and permits judges to find the existence of prior convictions for the purpose of enhanced penalties).

Sentencing courts determining whether a prior conviction is a violent felony or serious drug offense under the ACCA must apply a categorical approach. Mathis, 136 S. Ct. at 2248; Abbott, 748 F.3d at 157; Sykes v. United States, 131 S. Ct. 2267, 2272 (2011) (a categorical approach is employed in determining whether a specific conviction satisfies the statutory definition of a qualifying prior offense). Descamps clarified "the analytical approach that sentencing courts must use to determine if a prior conviction is a predicate offense under ACCA." Blair, 734 F.3d at 222. Mathis further clarified this approach in cases involving statutes that have "multiple alternative elements." Mathis, 136 S. Ct. at 2249.

Under the categorical approach, a sentencing court must review the elements of the predicate offense in order to determine whether the offense falls within the statutory definitions. A "prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as,

or narrower than, those of the [statutorily defined predicate offense]." United States v. Brown, 765 F.3d 185, 189 (3d Cir. 2014). A categorical review is limited to the elements of the defendant's prior conviction "without inquiry into the specific conduct of [the] particular offender." James v. United States, 550 U.S. 192, 202 (2007); United States v. Johnson, 587 F.3d 203, 208 (3d Cir. 2009); accord Abbott, 748 F.3d 156 ("When deciding whether a previous conviction counts as a 'violent felony or a serious drug offense' under the ACCA, a sentencing court may look only to the elements of a defendant's prior conviction, not 'to the particular facts underlying those convictions.'") (quoting Descamps, 133 S. Ct. at 2283 (quoting Taylor v. United States, 495 U.S. 575, 600 (1990)). In other words, only the fact of conviction and the statutory definition of the prior offense are relevant in determining whether an offense is a predicate offense. James, 550 U.S. at 202; accord Sykes, 131 S. Ct. at 2273; Mathis, 136 S. Ct. at 2248 ("And ACCA, as we have always understood it, cares not a whit about [the brute facts].") (citing Taylor, 495 U.S. at 599–602).

By identifying separate categories of predicate offenses based on the underlying elements, Congress evidenced an intent to have prior predicate offenses identified by uniform definitions that are independent of the labels employed under the various States' criminal codes. Taylor, 495 U.S. at 592; Mathis, 136 S. Ct. at 2251-52. These uniform definitions are confined to the elements that a jury necessarily would have found in order to convict, regardless of whether the conviction arises from a verdict or the entry of a guilty plea. Descamps, 133 S. Ct. at 2288; Mathis, 136 S. Ct. at 2252. In other words, "the only facts the court can be sure the jury [] found [in rendering a prior guilty verdict] are those constituting elements of the offense - as distinct from amplifying but legally extraneous circumstances [and] . . . when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements[.]"

Descamps, 133 S. Ct. at 2288; accord Mathis, 136 S. Ct. at 2248 (elements are the constituent parts of a crime's legal definition – they are the things a jury must find beyond a reasonable doubt to convict and the things to which a defendant must admit to enter a valid guilty plea). Implemented in this manner, the categorical approach comports with the ACCA's text and history, avoids the Sixth Amendment concerns that would arise from sentencing courts making findings of fact that properly belong to juries and "averts 'the practical difficulties and potential unfairness of a factual approach.'" Descamps, 133 S. Ct. at 2288 (quoting Taylor, 495 U.S. at 601).

A variant of the categorical approach known as the "modified categorical approach" has been approved for use in "a narrow range of cases." Brown, 765 F.3d at 189; Descamps, 133 S. Ct. at 2281; Mathis, 136 S. Ct. at 2249. Use of this approach is appropriate where "a prior conviction is for violating a so-called 'divisible statute.'" Descamps, 133 S. Ct. at 2281. A divisible statute "sets out one or more elements of the offense in the alternative." Id.; Brown, 765 F.3d at 190. If at least one of the alternative versions of the offense reflects the elements of a predicate offense under the ACCA, then "the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." Descamps, 133 S. Ct. at 2281; Brown, 765 F.3d at 189; Mathis, 136 S. Ct. at 2249. Where the conviction arises from the entry of a guilty plea, the list of approved documents are "the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Brown, 765 F.3d at 189-90 (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)); accord Descamps, 133 S. Ct. at 2284 (in Shepard, "we again authorized sentencing courts to scrutinize a restricted set of materials -- here, 'the terms of a plea

agreement or transcript of colloquy between judge and defendant' -- to determine if the defendant had pleaded guilty to [the offense of burglary as generically defined].").

Descamps made clear that the modified categorical approach always "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." Id. (quoting Descamps, 133 S. Ct. at 2285). The sentencing court is permitted "to examine a limited class of documents [only] to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." Id. (quoting Descamps, 133 S. Ct. at 2284). "Review of these documents then permits the court to 'do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the [predicate offenses as they are statutorily defined].'" Id. (quoting Descamps, 133 S. Ct. at 2284). Any lingering question about the limited nature of this inquiry was put to rest in Mathis. Mathis, 136 S. Ct. at 2251 ("Under ACCA, Taylor stated, it is impermissible for 'a particular crime [to] sometimes count towards enhancement and sometimes not, depending on the facts of the case.' Accordingly, a sentencing judge may look only to 'the elements of the [offense], not to the facts of [the] defendant's conduct.'") (quoting Taylor, 495 U.S. at 601)).

The modified categorical approach is "applicable only to divisible statutes." Brown, 765 F.3d at 190. A divisible statute is one that "lists multiple, alternative elements, and so effectively creates 'several different crimes,'" at least one of which has the same or more narrow elements as the ACCA's statutorily defined predicate offenses. Descamps, 133 S. Ct. at 2283-85; Brown, 765 F.3d at 189 ("a statute is 'divisible' when it 'list[s] potential offense elements in the alternative.'") (quoting Descamps, 133 S. Ct. at 2283). But more than general divisibility is required: "a sentencing court should apply the modified approach to a divisible statute and

examine extra-statutory documents only when 'at least one, but not all' of the separate versions of the offense is, by its elements, a predicate offense." Brown, 765 F.3d at 191 (citing with approval United States v. Cabrera–Umanzor, 728 F.3d 347, 352 (4th Cir. 2013) ("[g]eneral divisibility . . . is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence.") (quoting Descamps, 133 S. Ct. at 2285)).

In contrast, if a statute sweeps more broadly than a statutorily defined predicate offense because it consists of a "single, indivisible set of elements," then the statute is indivisible. Brown, 765 F.3d at 190 (quoting Descamps, 133 S. Ct. at 2282). Likewise, "[i]f a statute is generally divisible into multiple versions, but each version is overbroad (covers at least some conduct that is not a [predicate offense]) and indivisible (cannot be further divided into sub-versions based on the elements), the extra-statutory documents are irrelevant and a sentencing court's analysis has reached a dead-end: the prior conviction is not a predicate offense." Id. at 191 (citing Descamps, 133 S. Ct. at 2283). In either scenario the modified categorical approach has no application to the court's inquiry and a conviction under the statute cannot be converted into a predicate offense. Descamps, 133 S. Ct. at 2283; Brown, 765 F.3d at 193 (A statute that is "overbroad in that it criminalizes conduct that is not always considered a [prior predicate offense] and is thus indivisible "is categorically not a predicate offense for [the ACCA or career offender purposes]."). And this is so "even if the defendant actually committed the offense in its [statutorily defined] form." Descamps, 133 S. Ct. at 2282-83; Brown, 765 F.3d at 191 ("If the state statute 'sweeps more broadly' than the federal definition, a conviction under it is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another.") (quoting Descamps, 133 S. Ct. at

2283); Mathis, 136 S. Ct. at 2253 ("ACCA, as just explained, treats such facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence. And indeed, our cases involving the modified categorical approach have already made exactly that point. '[T]he only [use of that approach] we have ever allowed,' we stated a few Terms ago, is to determine 'which element[s] played a part in the defendant's conviction.'") (quoting Descamps, 570 U.S. at --, 133 S. Ct. at 2283, 2285).

Here, the government seeks to subject defendant to the ACCA based on three prior convictions: one under Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-101 *et seq.* ("the CSDDCA") and two under Pennsylvania's robbery statute, 18 Pa. C. S. § 3701. Defendant maintains that under Mathis his robbery convictions no longer qualify as ACCA predicate offenses because 1) the statute contains subsections that sweep more broadly than the ACCA's force clause, 2) the subsections list means as opposed to elements in defining felony robbery, 3) even if the statute is divisible, the government has not produced appropriate documentation showing the specific offenses were violent felonies, and 4) any potential subsections do not satisfy the force clause in any event.

The record demonstrates that defendant has three predicate offenses under the ACCA. The government advances one conviction for violation of the prohibited acts and penalties set forth at 35 P.S. § 780-113(a)(30) of the CSDDCA. This section provides:

> (a)      The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). The pertinent penalty section provides:

(f) Any person who violates clause (12), (14) or (30) of subsection (a) with respect to:

> (1) A controlled substance or counterfeit substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding fifteen years, or to pay a fine not exceeding two hundred fifty thousand dollars ($250,000), or both or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal activity.

35 P.S.§§ 780-113(f)(1).

The United States Court of Appeals for the Third Circuit has held (post-<u>Descamps</u>) that 35 P.S. § 780-113(a)(30) is a divisible statute and that the use of the modified categorical approach is proper when determining whether a prior conviction thereunder is a predicate offense under the ACCA. <u>Abbott</u>, 748 F.3d at 156 ("We hold that 35 Pa. Stat. Ann. § 780–113(a)(30) is divisible and, accordingly, the trial court's use of the modified categorical approach was proper.").

Drawing support from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Alleyne v. United States</u>, -- U.S. --, 133 S. Ct. 2151 (2013), the <u>Abbott</u> court analyzed the structure of 35 P. S. § 780-113(a)(30) and its corresponding penalty section at 35 P. S.§ 780-113(f) and concluded that the controlled substance involved in a § 780-113(a)(30) offense determined both the applicable minimum and maximum penalties and thus the particular substance giving rise to the charge is an alternative element that must be proved to a jury beyond a reason doubt. <u>Id.</u> at 158-59. It further held: "[u]nder Pennsylvania law, possession with the intent to distribute cocaine is punishable by a maximum term of imprisonment of ten years" and a conviction for such an offense "is a 'serious drug offense' and properly [can serve] as a predicate offense for the imposition of the fifteen-year minimum sentence under the ACCA." <u>Id.</u> at 159-60.

In <u>United States v. Henderson</u>, 841 F.3d 623 (3d Cir. 2016), the United States Court of Appeals for the Third Circuit revisited whether a conviction under 35 P. S. § 780-113(a)(30) and

its corresponding penalty section at 35 P. S. § 780-113(f) constitutes a serious drug offense under the refined analysis set forth in <u>Mathis</u>, and concluded that such a conviction is a qualifying predicate offense. <u>Henderson</u>, 841 F.3d at 628. It first determined that the statute did not list different means of committing a singularly defined controlled substance offense but instead enumerated different elements. <u>Id.</u> ("the first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means."). It considered the three sources identified in <u>Mathis</u> that can inform the analysis, and concluded that each supported the determination that Pennsylvania's Controlled Substance Act was a divisible statute. <u>Id.</u> at 628-631. It further determined that the charging instruments and the records of conviction from the sentencing court contained the requisite level of certainty required under <u>Shepard</u>. <u>Id.</u> at 632.[1]

Here, the government submitted records of defendant's June 25, 2001, conviction under the CSDDCA. They reflect that defendant was charged in a three count information on April 3, 1998. Count one charged delivery of heroin in violation of 35 P.S. § 780-113(a)(30); Count two charged possession of heroin with the intent to deliver in violation of 35 P.S. § 780-113(a)(30); and Count three charged possession of heroin in violation of 35 P.S. § 780-113(a)(16). <u>See</u> Information of January 25, 1999 (Doc. No. 124-1) at p. 2-3. Defendant entered a plea of guilty to all three counts on June 25, 2001. <u>Id.</u> at 1. He was sentence to one to two years at count one, to be served concurrent with another state sentence, and no further penalty at counts two and three. <u>Id.</u> at 4.

Defendant's conviction for delivery of heroin pursuant to 35 P.S. § 780-113(a)(30) and its

---

[1] Because the produced records from the sentencing court sufficiently corroborated the recording of the convictions as set forth in the County Clerk of Court's "Report of Courts" form, "the actual conviction documents" did not have to be produced by the government to meet <u>Shepard</u>'s demand of accuracy. <u>Id.</u>

corresponding penalty section at 35 P. S. § 780-113(f) constitutes a serious drug offense under the ACCA. Henderson, 841 F.3d at 628. The documents of record establish this conviction with the requisite level of certainty demanded by Shepard. Thus, it counts as a qualifying predicate offense.

The government highlights defendant's convictions for robbery in violation of 18 Pa. C. S. § 3701(a)(1) to establish the other two predicate convictions. Defendant vehemently argues that Pennsylvania's robbery statute cannot qualify as a predicate offense because 1) it sweeps more broadly than the force clause and merely lists alternative means for committing a singular offense of aggravated robbery, 2) the United States Court of Appeals for the Third Circuit's determination that the statute is divisible in Blair did not survive Mathis and 3) the documents submitted by the government do not meet the requisite level of certainty to establish a violent felony in any event. As a result, defendant maintains that his robbery convictions cannot supply a valid predicate offense under the ACCA. The government contends the statute is divisible and the documents establish that defendant has two additional predicate convictions for robbery.

Determining whether defendant's prior convictions under Pa. C. S. § 3701(a)(1) qualify as predicate offenses under the ACCA requires the resolution of three questions. Is Pennsylvania's robbery statute divisible? If so, do the Sheppard documents that can be considered establish with certainty which subsection formed the basis for each conviction? And, if so, does each conviction qualify as a violent felony under the ACCA? Cf. United States v. Ramos, 892 F.3d 599, 607 (3d Cir. 2018) (applying three step framework in concluding Pennsylvania's aggravated assault statute is divisible and subsection 2702(a)(4) categorically is a crime of violence under the elements clause of the United States Sentencing Guidelines). The record mandates that each of these questions be answered in the affirmative.

Pennsylvania's robbery statute is divisible. In <u>Henderson</u>, the court identified the three methods for examining penal statutes to determine whether they contain elements or means. <u>Henderson</u>, 841 F.3d at 628. First, state law should be examined to determine if "a state court decision definitively answers the question . . . ." <u>Id.</u> (citing <u>Mathis</u>, 136 S. Ct. at 2256). Second, examining the "statute on its face . . . may resolve the issue." <u>Id.</u> Finally, if state law does not definitely resolve the inquiry, the court may examine the "prior conviction itself" to see if it answers the inquiry. <u>Id.</u>

Defendant posits that the state law inquiry supports the proposition that each of the first three subsections of § 3701(a)(1) collectively identify one offense that is understood as aggravated robbery and thus subsections (i) through (iii) are merely means of committing that singular offense. He advances four sources of authority to support this position: 1) commentary in the source for Pennsylvania's statute, the Model Penal Code, indicating the formulation of the robbery offense was drafted to create "the single offense of robbery, defined to include aggravated behavior occurring in the course of committing a theft," 2) Pennsylvania's pattern jury instructions, 3) Pennsylvania case law upholding robbery convictions where all three subsections of aggravated robbery were charged in a single count, and 4) Pennsylvania Rule of Criminal Procedure 563(B) (which mandates that separate and distinct crimes be charged in separate counts). He concludes:

> Pennsylvania appellate authority thus clearly demonstrates that while the evidence presented in any given case may warrant jury instruction on only a subset of the several alternative means enumerated in § 3701(a)(l)(i) through (iii), the three subsections do not each define a separate element that juries must unanimously agree was proven beyond a reasonable doubt. Even if state law were less clear, however, it could not be held to demonstrate with the "certainty" that <u>Mathis</u> demands that each of the subsections defines a different offense. <u>Mathis</u>, at 136 S. Ct. 2257; <u>Chang-Cruz v. Attorney General</u>, 659 F. App'x 114, 119 (3d Cir. 2016) (deeming statute indivisible in view of the "ambiguity in New Jersey law" and Government concession). Given this line of Pennsylvania authority, § 3701(a)(l)(i) to (iii) is indivisible and the modified categorical approach is irrelevant to

the analysis.

Defendant's Response to Government's Sentencing Memorandum (Doc. No. 127) at 13.

Defendant's contention that Pennsylvania law resolves the issue of divisibility in his favor or at best leaves the issue unresolved is insidious. Careful and critical review of Pennsylvania law demonstrates that each of the first three subsections reflect distinct, alternative elements that may be used to obtain a conviction under Pennsylvania's robbery statute.

Pennsylvania's robbery statute provides:

(a) Offense defined.--

(1) A person is guilty of robbery if, in the course of committing a theft, he:

    (i)       inflicts serious bodily injury upon another;

    (ii)      threatens another with or intentionally puts him in fear of immediate serious bodily injury;

    (iii)    commits or threatens immediately to commit any felony of the first or second degree;

    (iv)    inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;

    (v)       physically takes or removes property from the person of another by force however slight; or

    (vi)    takes or removes the money of a financial institution without the permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

(2) An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

(3) For purposes of this subsection, a "financial institution" means a bank, trust company, savings trust, credit union or similar institution.

18 Pa. C. S. § 3701. The offense is graded as follows:

(b) Grading --

(1) Except as provided under paragraph (2), robbery under subsection (a)(1)(iv) and (vi) is a felony of the second degree; robbery under subsection (a)(1)(v) is a felony of the third degree; otherwise, it is a felony of the first degree.

(2) If the object of a robbery under paragraph (1) is a controlled substance or designer drug as those terms are defined in section 2 of the act of April 14, 1972 (P.L. 233, No. 64), known

as The Controlled Substance, Drug, Device and Cosmetic Act, robbery is a felony of the first degree.

Id.

The Superior Court of Pennsylvania long ago recognized that the subsections of this statute delineate different elements to be proved at trial. In <u>Commonwealth v. Neal</u>, 418 A.2d 378 (1980), the defendant was indicted pursuant to a charge that provided: [on July 19, 1975], the defendant "did in the course of committing a theft, feloniously commit or threaten immediately to commit a felony of the first or second degree." <u>Id.</u> at 379. The charge utilized the language of and was limited to subsection (iii). <u>Id.</u> At trial, the Commonwealth produced evidence that was limited exclusively to a violation of subsection (ii), proving that the defendant did in the course of committing a theft threaten another with or intentionally put another in fear of immediate serious bodily injury. <u>Id.</u>

Recognizing the presence of a variance, the trial judge instructed the jury on a charge of violating subsection (ii). The defendant objected and was overruled. The jury found the defendant guilty. <u>Id.</u> The defendant appealed, contending there had been an impermissible amendment to the indictment, resulting "in his being charged with a different offense because the elements of subsection (ii) and of subsection (iii) are not the same" and thus there had been a violation of Pennsylvania's Rule of Criminal Procedure 220. <u>Id.</u>[2]

The Superior Court reversed on the grounds that there had been a fatal variance. It

---

[2]  This Rule provided in pertinent part:

The court may allow an indictment to be amended where there is a defect in form, the description of the offense, the description of any person or any property, or the date charged provided the indictment as amended does not charge an additional or different offense.

<u>Id.</u> at 379-80 (quoting Pa. R. Crim. P. 220).

opined:

> Here, both the original and amended indictments describe acts which come within the ambit of the broad definition of robbery in the Crimes Code. Nevertheless, the original and amended indictments cannot be said to have charged the same particular offense, as each indictment would require the proof of different elements. Subsection (ii) and subsection (iii) of Section 3701 are not interchangeable, because subsection (iii) involves the threat of a felony of the first or second degree, and subsection (ii) does not. In the instant case, the indictment charged appellant with having threatened or committed a felony of the first or second degree, yet the Commonwealth failed to produce evidence supporting the charge at trial.

Id. at 380. Because the charge in the indictment returned by the grand jury substantively was changed by the proof at trial and the amendment to the charge effectively created thereby, the defendant's conviction was reversed and the defendant was discharged. Id.

The Superior Court consistently has recognized that a change to the nature of an offense in the form of what the Commonwealth must prove to obtain a conviction involves "a substantive change of the elements of the crime," which may be to a defendant's prejudice. Commonwealth v. Gray, 478 A.2d 822, 825 (Pa. Super. Ct. 1984).[3] Where there is a change in the nature of what the Commonwealth must prove at trial to the defendant's prejudice, there has been a substantive change in the elements between the crime charged and the proof at trial. When there is prejudice as a result of that change the conviction cannot stand. See Commonwealth v. Kopp, 591 A.2d 1122, 1125-26 (Pa. Super. Ct. 1991) (following Neal in vacating the defendant's conviction for aggravated assault and discharging him where the jury was instructed on subsections (a)(1) and (a)(2) of 18 Pa. C. S. § 2702 after the Commonwealth restricted its proof to the elements of aggravated assault under §§ 2702(a)(3) and (a)(4)); Commonwealth v. Gray, 478 A.2d 822, 824-25 (Pa. Super. Ct. 1984) (following Neal in vacating a conviction where the

---

[3] Of course, it is possible that a variance of this nature can occur under circumstances that do not prejudice the defendant and/or the defendant can waive the due process rights in question by failing to preserve an objection to the substantive change in the elements of the charge. Id. (collecting cases).

15

information charged criminal trespass by surreptitious or deceptive entry and an amendment was permitted to conform to the proof at trial, which established forcible entry; in addition to changing the grading of the offense, the amendment changed "the elements required to prove guilt" without giving the defendant proper notice to prepare for trial).

Moreover, the Pennsylvania courts consistently have recognized that the nature of what the government must prove under the various subsections of the robbery statute changes. Under subsection (i) the Commonwealth must prove serious injury robbery, which requires proof that the defendant inflicted serious bodily injury in the course of committing a theft. Commonwealth v. Payne, 868 A.2d 1257, 1262 (Pa. Super. Ct. 2005). To prove physical menace robbery under subsection (ii), the Commonwealth must prove the defendant threatened another with serious bodily injury or put the individual in fear of immediately sustaining the same. Commonwealth v. Kubis, 978 A.2d 391, 397-98 (Pa. Super. Ct. 2009). And subsection (iii) requires that one commit or threaten to commit a felony of the first or second degree, such as aggravated assault, during the course of committing a theft. Id.

The varying nature of the Commonwealth's burden of proof under the robbery statute's subsections is important because it fixes the offense gravity score in the Pennsylvania Sentencing Guidelines, which informs the degree of punishment the trial judge is advised to impose. Payne, 868 A.2d at 1262 & n. 5 ("The difference [of being convicted under serious injury robbery under § 3701(a)(1)(i) and physical menace robbery under § § 3701(a)(1)(ii)] is indeed important since the offense gravity score affixed to a § 3701(a)(1)(i) robbery is higher than for the § 3701(a)(1)(ii) variety."). It likewise guides the application of the merger doctrine in imposing sentence. Id. (aggravated assault does not merge into serious injury robbery because the elements of serious injury robbery require only the infliction of serious bodily injury during the

commission of a theft whereas aggravated assault requires the injury be committed with a particular state of mind).

The Superior Court consistently has recognized the subsections of the robbery statute set forth elements that must be charged and proved beyond a reasonable doubt to obtain a conviction. See Neal, 418 A.2d at 380 (although the means by which the defendant committed the criminal acts came within "the ambit of the broad definition of Robbery in the Crimes Code," subsections (ii) and (iii) are not interchangeable because they identify different elements that the Commonwealth must prove: "subsection (iii) involves the threat of a felony of the first or second degree, and subsection (ii) does not."); Kubis, 978 A.2d at 397-98 (appellant's threatening to stab the victim with a knife during the course of a theft supplied sufficient evidence to meet the element of subsection (ii) because appellant made the threats in a manner that placed the victim in fear of immediate serious bodily harm despite the lack of evidence that he actually had a knife and supplied sufficient evidence to meet the element of subsection (iii) because appellant had attempted to commit aggravated assault, which is a "felony of the first or second degree"); Commonwealth v. Valentine, 101 A.3d 801, 806-7 (Pa. Super. Ct. 2014) ("Appellant is correct that to sustain his conviction for robbery (serious bodily injury), the Commonwealth was required to prove that in the course of committing a theft, Appellant 'threaten[ed] another with or intentionally put . . . [her] in fear of immediate serious bodily injury.' 18 Pa. C. S. § 3701(a)(1)(ii). The evidence is sufficient to convict a defendant of robbery under this section if the evidence demonstrates aggressive actions that threatened the victim's safety."); Payne, 868 A.2d at 1262-63 (appellant's shooting the victim in the back as he ran during the course of an armed robbery "established the 'serious bodily injury' element for both the § 3701(a)(1)(i) robbery and § 2702(a)(1) aggravated assault convictions"); cf. Gray, 478 A.2d at 824-25 ("We

note also that for purposes of amending an information, a substantive amendment is one that changes the *nature or grade* of the offense charged.") (emphasis added) (citing <u>Commonwealth v. Herstine</u>, 399 A.2d 1118 (Pa. Super. Ct. 1979)).  This developed body of law on the nature of what must be proved under the separate subsections of the robbery statute clearly demonstrates that Pennsylvania law treats the subsections of the robbery statute as elements.

A statute that criminalizes different forms of conduct and does so through a disjunctive list of alternatives that provides for conviction upon proof of any one of the alternatives is divisible.  <u>Ramos</u>, 892 F.3d at 609.  Pennsylvania precedent establishes that subsection one of Pennsylvania's robbery statute is construed as a listing of elements that identify alternative forms of conduct that the Commonwealth must prove to obtain a conviction.  Consequently, the first source informing the "elements verses means" undertaking as refined by <u>Mathis</u> supports the conclusion that Pennsylvania's robbery statute is divisible pursuant to its subsections.

The second method in undertaking the divisibility inquiry likewise leads to the same determination.  A criminal statute must be examined in its entirety when conducting a facial inquiry into divisibility.  <u>Ramos</u>, 892 F.3d at 609, n. 45.

In <u>United States v. Blair</u>, 734 F.3d 218 (3d Cir 2013), the court undertook a facial analysis of Pennsylvania's robbery statute pursuant to the defendant's appeal of this court's determination that he was subject to the ACCA.  After examining the statute set forth above, Judge Jordan wrote:

> Given the clearly laid out alternative elements of the Pennsylvania robbery statute, it is obviously divisible and, therefore, a sentencing court can properly look to the kinds of documents listed by the Supreme Court in <u>Taylor</u> and <u>Shepard</u> to determine which subsection was the basis of Blair's prior convictions.

<u>Id.</u> at 225.  Notwithstanding any question concerning whether <u>Mathis</u> abrogated other aspects of the <u>Blair</u> court's analysis, <u>see</u> <u>United States v. Singleton</u>, 2017 WL 1508955 at * 4 (E.D. Pa. Apr.

26, 2017), a number of district courts within the Third Circuit have continued to follow <u>Blair</u> or otherwise reach the same conclusion with respect to the divisibility of the statute. These include: <u>United States v. Coffie</u>, 2017 WL 3433991 at *4 & n. 7 (E.D. Pa. Aug. 9, 2017) (collecting cases); <u>United States v. Villella</u>, 2017 WL 1519548, at *7 (W.D. Pa. Apr. 27, 2017); <u>United States v. Wilson</u>, 2017 WL 1092679, at *2 (W.D. Pa. March 23, 2017); <u>United States v. Maldonado</u>, 2016 WL 4206371, at *4 (E.D. Pa. Aug. 9, 2016); <u>United States v. Harris</u>, 205 F. Supp.3d 651, 672-73 (M.D. Pa. 2016); <u>United States v. Wilson</u>, 2017 WL 3782991 *2 (W.D. Pa. Aug. 31, 2017); <u>United States v. Peppers</u>, 2016 WL 7104291 *1 (M.D. Dec. 6, 2016). Thus, a substantial number of courts have recognized post-<u>Mathis</u> that <u>Blair</u> continues to provide support for the proposition that section 3701(a)(1) is divisible and/or the very structure of the robbery statute supports the assessment that it is divisible in any event.

We agree with the above-referenced authority. It is clear that Pennsylvania's robbery statute is structured to result in convictions for different variations of the general crime of robbery. The structure reflected in the subsections changes the nature of what the Commonwealth must prove to obtain a conviction under any particular subsection. This "obvious" feature of the statute in itself creates divisibility. <u>Blair</u>, 734 F.3d at 225; <u>Ramos</u>, 892 F.3d at 609 (a statute that "criminalizes different conduct and sets forth different (albeit overlapping) elements that must be proven beyond a reasonable doubt" is divisible).

Moreover, a review of the varying forms of punishment that flow from the separate subsections of the statute lend support to the determination that it is divisible. The subsections of the robbery statute define felonies of the first, second and third degree under Pennsylvania law. 18 Pa. C. S. § 3701(b)(1). All subdivisions define a felony of the first degree if the conduct in any particular subsection is perpetrated with the intent to obtain possession of a controlled

substance.  18 Pa. C. S. § 3701(b)(2).  Felonies of the first, second and third degrees carry

different statutory maximum penalties under Pennsylvania law.  See 18 Pa. C. S. § 1103.

Under Apprendi v. New Jersey, 530 U.S. 466 (2000), other than the fact of a prior

conviction, any fact that increases the maximum penalty to which an offender is exposed

necessarily must be submitted to the jury and proved beyond a reasonable doubt.  Id. at 490.

Pennsylvania's robbery statute contains offenses carrying three different ranges of maximum

punishment.  They likewise result in different sentencing ranges under Pennsylvania's

Sentencing Guidelines.  See 204 Pa. Code Ch. 303.  A statutory scheme that delineates differing

degrees of maximum punishment makes the statute divisible.  Ramos, 892 F.3d at 609, n. 45 (the

fact that a statute is divided into subsections that change the applicable maximum punishment in

itself authorizes a review of Sheppard documents under the modified categorical approach).

Under Pennsylvania's robbery statute the mandatory statutory penalties and the advisory

sentencing ranges change based on the particular subsection(s) upon which the conviction rests.

Commonwealth v. Thomas, 546 A.2d 11, 119 (Pa. Super. Ct. 1988) ("In distinguishing between

bodily injury and serious bodily injury, the legislature recognized that the amount of force used

or threatened on a person during a robbery deserved separate treatment and penalty, with the

punishment proportionate to the amount of violence threatened or used.") (citing Commonwealth

v. Brown, 484 A.2d 738, 741 (Pa. 1984) (By separating the robbery statute into its multiple

subsections, the "Legislature has eliminated the vexing problem of determining the amount of

force required to commit a robbery.  The amount of force used is relevant only when grading the

offense as a first, second, or third degree felony, and is in keeping with the legislative directive to

punish robbers according to the amount of violence they inflict on their victims.).  In our view,

this structure reflects precisely the statutory structure the Mathis court envisioned in highlighting

the second method for determining divisibility.

The third method equally lends support to the result reached in employing the first two. Among other documents, the government submitted the information charging defendant with two separate counts of robbery. <u>See</u> Information in Criminal Action B45 of 1986 in the Court of Common Pleas of Butler County (Doc. No. 123-2) at p.1-2. The information specifically charged defendant in each separate count with threatening the victim "with serious bodily injury or put[ting] that person in fear of serious bodily injury." <u>Id.</u> at 1-2. It likewise specifically identified physical menace robbery under subsection (ii) as the statutory authority for the robbery charges. <u>Id.</u> at 1, 3. No other subsections of the robbery statute were charged. <u>Id.</u> at 3. It is apparent that the Commonwealth's prerogative to charge and pursue a violation of a single subsection in § 3701(a)(1) adds further support to the proposition that each of the subsections constitutes a separate element that may be used to prove the crime of robbery. And it likewise is clear that without that particular subsection being charged and proved the two separate elements of the offense would not have been established.

Against this backdrop, defendant's arguments are unavailing. First, the fact that the Model Penal Code sought to define a "single offense of robbery" that included three subsections of "aggravated behavior" misses the point. As Judge Vanaskie recognized in <u>United States v. Warren</u>, 723 Fed. Appx. 155 (3d Cir. 2018), the fact that a state legislature sought to define a single offense of robbery does not preclude a determination that it did so in a manner that employs divisible elements. <u>Id.</u> ("But all of these statements, even if taken at their strongest, do not preclude the possibility that Maryland robbery is a single, yet divisible, offense."). This is particularly true where, as here, the legislature has defined the single offense by identifying various forms of aggravated behavior that change 1) what the Commonwealth must prove and 2)

the grading of the offense statutorily and/or under the Pennsylvania sentencing guidelines.

Similarly, defendant's reliance on the Pennsylvania Bar Institute's standard jury instructions for the crime is wide of the mark. These instructions provide:

First, that the defendant:

a. inflicted serious bodily injury on the victim; [or]

b. threatened the victim with serious bodily injury; [or]

c. intentionally put the victim in fear of immediate serious bodily injury; [or]

d. committed or threatened to immediately commit the felony of [type of crime] . . . [and]

Second, the defendant did this during the course of committing a theft.

PBI Pennsylvania Suggested Standard Criminal Jury Instructions § 15.3701.A (3rd ed. & 2016 Supp.).

Tellingly, defendant has not identified an overarching element that must be proved to establish the first of the two-element format. To the contrary, under the instructions the first element consists only of a list of alternatives that track the first three subsections of § 3701(a)(1), albeit through four alternatives. Defendant seeks to add language to the statute and instructions by requiring an overarching element such as "aggravated behavior," a formulation that does not have textual support in the statute or the suggested standard instructions. And the lack of any explicit overarching element to be charged and instructed, such as "first, the defendant must have engaged in violent or aggravated behavior, such as . . .", undermines significantly defendant's assertion that the subsections of the statute do not supply separate, alternative elements, at least one of which must be charged and proven by the Commonwealth.

Moreover, defendant's reliance on various cases that found a lack of prejudice where the defendant had been charged with violating multiple subsections of § 3701(a)(1) by committing

robbery through a specified means is misplaced. Clearly, one can violate more than one of the first three subsections through a single course of conduct, as was the case in Commonwealth v. Green, 2013 WL 11254814 (Pa. Super. Ct. 2013) and Payne. Where the defendant is charged with violating the statute through a distinct means which clearly would satisfy each subsection, a charge and jury instructions that present the alternative elements together cannot give rise to meaningful prejudice. This is because the Commonwealth has limited its theory of the case and presentation to a single course of conduct that, if proven, satisfies each of the charged alternative elements. Such was the case in Payne. The evidence indicated the defendant approached the victim with two guns drawn, demanded money, threatened to shoot the victim after being rebuffed, and then shot the victim as he ran from the scene. Payne, 868 A.2d at 1259-60. The defendant challenged the sufficiency of the evidence to support the conviction for aggravated assault and argued the crimes of aggravated assault merged with serious injury robbery for the purposes of sentencing. He did not challenge the manner in which the Commonwealth charged and proved the crime of robbery. Likewise, the Superior Court was not asked to consider whether the defendant was prejudiced by the Commonwealth's use of the asserted course of conduct to prove both of the alternative elements in two of the subsections of the robbery statute. It had no difficulty concluding that "one criminal act" committed by the defendant constituted an offense under both the aggravated assault and robbery statutes, notwithstanding that each offense required proof of separate elements. Id. at 1263. It follows that Payne supports rather than negates the proposition that Pennsylvania's robbery statute effectively consists of a listing of alternative elements.

Similar instances of charging and proving multiple subsections of the robbery statute through a singular course of conduct underlie the convictions in United States v. Singleton, 252

F. Supp.3d 423 (E.D. Pa. 2017), and United States v. Thorn, 282 F. Supp.3d 886 (E.D. Pa. 2017). In each case the Pennsylvania courts were not requested to pass on whether unanimity was required in proving the different forms of conduct made illegal in the charged subsections of the robbery statute. And the episode of criminal conduct alleged to have been perpetrated by the defendant, if proven, satisfied each of the subsections of the robbery statute that had been charged. The fact that the Pennsylvania courts did not find error with regard to a matter that was not placed at issue cannot be understood to be an endorsement that uniformity need not be proven with regard to any one of the specific but different forms of conduct made criminal by the charged subsections at issue. Cf. Ramos, 895 F.3d at 609, n. 50 (cases recognizing that an imprecise charging instrument did not violated a defendant's due process rights cannot be understood to reflect tacit approval of the flawed charging).

Defendant has done nothing more than cite a series of cases where the Pennsylvania appellate courts have not been asked to determine directly whether each of the charged subsections of the robbery statute must be proven beyond a reasonable doubt and/or found with unanimity. The fact that various Pennsylvania cases have held that a defendant did not suffer meaningful prejudice under circumstances that did not place these questions directly at issue provides little support for the proposition that Pennsylvania courts have treated the subsections of the robbery statute merely as an alternative listing of means. Given this state of affairs, it would be improper to draw the conclusion that the Pennsylvania courts endorse and would directly hold that the Commonwealth need not prove and a jury need not unanimously find the elements of each charged subsection of the robbery statute. Id. And as noted above, both the cases wherein the Superior Court has been asked to examine the nature of the subsections of Pennsylvania's robbery statute and the graduation of the various subsections into first, second

and third degree felonies forcefully support the proposition that the statute is divisible.

Each of the methods for conducting the means/elements inquiry under <u>Mathis</u> support the determination that Pennsylvania's robbery statute is divisible. The authority advanced by defendant does not meaningfully undermine this assessment. We conclude that the statute is divisible.

Having answered the inquiry of divisibility in the affirmative, the next step is to determine whether the <u>Sheppard</u> documents that may be reviewed establish with certainty which subsection(s) of § 3701(a)(1) formed the basis for defendant's specific convictions. As previously explained, defendant was charged by information with two separate counts of physical menace robbery in violation of 18 Pa. C. S. § 3701(a)(1)(ii). The charges stemmed from two separate episodes of conduct involving two separate victims. <u>See</u> Information in Criminal Action B45 of 1986 in the Court of Common Pleas of Butler County (Doc. No. 123-2) at p.1-2. The text of subsection (ii) was specifically used in the charge. <u>Id.</u> No other subsection of §3701(a)(1) was identified in the information. <u>Id.</u> Defendant pled guilty to the "charge of robbery." He received a sentence of incarceration of "not less than five (5) nor more than ten (10) years on each count, with the two sentences on the two counts being concurrent." Sentence of the Court in B45 of 1986, <u>Commonwealth v. Timothy John Sunday</u>, September 2, 1986 (Doc. No. 123-3). Defendant did not plead guilty to any other charge in the information. He was ordered to pay separate amounts of restitution to each victim. <u>Id.</u>

The information charged defendant with two separate counts of violating 18 Pa. C. S. § 3701(a)(1)(ii). Defendant pled guilty to these charges and the judgment order imposed a sentence on each count. These <u>Sheppard</u>-approved documents show with the requisite level of certainty that defendant was convicted of two separate counts of robbery in violation of 18 Pa. C.

S. § 3701(a)(1)(ii).

We turn to the third step in the inquiry: whether § 3701(a)(1)(ii) constitutes a violent felony under the ACCA. As previously noted, the elements clause of the ACCA defines a violent felony as any crime punishable by imprisonment for a term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has interpreted the term "physical force" to denote "violent force." United States v. Chapman, 866 F.3d 129, 132 (3d Cir. 2017). And violent force is "force exerted by and through concrete bodies" that is "capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 138-40 (2010); United States v. Castleman, – U.S. –, 134 S. Ct. 1405, 1410 (2014). Accordingly, a state crime satisfies the elements clause "so long as it has an element that can be satisfied only through the use, threatened use, or attempted use of force against another person that is capable of causing that person physical pain or injury." Ramos, 892 F.3d at 611 & n. 58 (citing Johnson, 559 U.S. at 138-43).

The term "use" is understood to mean "the intentional employment of . . . force, generally to obtain some end." Chapman, 866 F.3d at 132 (quoting Tran v. Gonzales, 414 F.3d 464, 470 (3d Cir. 2005)). It "conveys the idea that the thing used . . . has been made the user's instrument." Id. (quoting Castleman, – U.S. –, 134 S. Ct. at 1415). (some internal quotation marks omitted).

"Minor uses of force may not constitute 'violence' in the generic sense." Castleman, 134 S. Ct. at 1412. But violent force may be applied "directly (e.g., hitting a victim with a bat) or . . . indirectly (e.g., throwing a brick at a victim)." Ramos, 892 F.3d at 611 (citing Chapman, 866 F.3d at 132-33).

Subsection (ii) of 18 Pa. C. S. § 3701(a)(1) criminalizes the threatening of another with immediate serious bodily injury or intentionally putting an individual in fear of such an injury during the course of committing a theft. "Bodily injury" statutorily is defined as "impairment of physical condition or substantial pain." 18 Pa. C. S. § 2301. "Serious bodily injury" statutorily is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id.

The question is whether a conviction predicated on threatening another with or intentionally putting that individual in fear of immediate serious bodily injury during the course of committing a theft necessarily requires the use or threatened use of physical force against the person of another. The Supreme Court has opined that a crime that requires "the knowing or intentional causing of bodily injury" is one that "necessarily involves the use of physical force." Ramos, 892 F.3d at 612 (quoting Chapman, 866 F.3d at 133). In follows a fortiori that impairing one's physical condition or causing one substantial pain in a manner that "creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ" can only be accomplished through the use, attempted use or threatened use of physical force capable of producing such a result. See Castleman, 134 S. Ct. at 1416-17 ("It is impossible to cause bodily injury without using force 'capable of' producing that result.") (Scalia, J., concurring); cf. Chapman, 866 F.3d at 133 (A crime encompasses the use of physical force within the meaning of U.S.S.G. § 4B1.2(a)(1) where one of its elements "involves the intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body.").

Here, putting another in fear of serious bodily injury necessarily involves the threatened use of force that could be perceived as capable of producing such a result. In other words, "threaten[ing] another with or intentionally put[ting] him in fear of immediate serious bodily injury" can only be accomplished through the threat or attempted use of physical force that could be perceived as capable of producing that result. And it follows that doing so can only be accomplished by the threatened or attempted use of physical force against the person of another.[4]

Pennsylvania's robbery statute is divisible. Defendant was convicted of two counts of robbery in violation of 18 Pa. C. S. § 3701(a)(1)(ii). These counts of conviction were based on offenses that occurred on occasions separate from one another. Each was a violent felony under the ACCA.[5] When coupled with his prior serious drug offense in violation of the CSDDCA, he has three qualifying predicate offenses under the ACCA. It follows that he is subject to the

---

[4] Of course, in determining whether "the minimum conduct criminalized by [a] state statute" constitutes a violent felony under the ACCA, we must eschew any attempt to "apply legal imagination" to the statute and be satisfied from the available legal authority that there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct falling outside of the" definition of such a felony. Ramos, 892 F.3d at 606 (citing Moncrieffe v. Holder, 569 U.S. 184, 191 (2013)). It is in this vein that it virtually is inconceivable that one could put another in fear of serious bodily injury during the course of committing a theft without threatening or attempting to use physical force that is capable of producing such a result.

[5] In both Singleton and Thorn, the federal court's inquiry on habeas review resulted in the determination that the defendant's conviction was for all of the charged subsections of 3701(a)(1), which in each case included subsections (i), (ii) and (iii). It appears that subsection (iii) sweeps more broadly than the ACCA's and the Sentencing Guidelines' elements clause, and thus the convictions could not be limited solely to a qualifying predicate offense at the third step of the analysis utilized by the court in Ramos. In other words, the robbery statute properly is understood to be divisible, but the defendants' convictions in Singleton and Thorn did not qualify as predicate offenses because review of the permissible Sheppard documents failed to isolate the convictions to a violent felony/crime of violence.

enhancement penalty provisions of 18 U.S.C. § 924(e).

<u>Date: July 25, 2018</u>

<u>s/David Stewart Cercone</u>
David Stewart Cercone
Senior United States District Judge

cc:    Michael Ivory, AUSA
      William Kaczynski, Esquire

      United States Probation Office
      United States Marshal

      (*Via CM/ECF Electronic Mail*)